# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **TRAVIS JAMES WEBB,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:14CV00106 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL BROYLES,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Travis James Webb, Pro Se Plaintiff; Kate E. Dwyre, Assistant Attorney General, Office of the Attorney General of Virginia, Richmond, Virginia, for Defendant.*

The plaintiff, Travis James Webb, a Virginia inmate proceeding pro se, brought this prisoner civil rights action under 42 U.S.C. § 1983. The claims remaining before me seek monetary damages. They rest on Webb's allegations that the defendant, Michael Broyles, Food Service Manager at Wallens Ridge State Prison, falsely accused Webb of violating his religious diet agreement, knowing that Webb's approval for the diet would thus be suspended, in violation of the First Amendment. He also asserts that Broyles stopped providing the diet to Webb before he had received notice and a hearing, in violation of his due process rights.[1]

---

[1] By prior order, I granted the defendant's Motion to Dismiss as to Webb's claims for monetary damages under the Religious Land Use and Institutionalized Persons Act. Webb does not seek injunctive relief and submits evidence that he was reinstated to the Common Fare diet program in late May 2014. Neither party has invoked the right to a jury trial.

After review of the record, I find genuine issues of material fact in dispute. Therefore, I must deny the parties' cross motions for summary udgment and will refer the matter to the magistrate judge for further proceedings, pursuant to 28 U.S.C. § 636(b)(1)(B).

Certain facts relevant to Webb's claims are undisputed. The Common Fare diet is "designed to specifically meet the dietary needs of offenders who, for religious reasons, require a Kosher non-pork diet and whose dietary requirements cannot be accommodated with foods provided by the Master Menu." (Broyles Aff. ¶ 4, ECF No. 36-1.) Because the Common Fare menu costs more to prepare per inmate than does the Master Menu, would-be participants must be approved by the Institutional Classification Authority ("ICA") and sign an agreement stating that eating from the regular menu will result in suspension from the Common Fare diet.

Webb, based on his Buddhist religious beliefs, has ICA approval to participate in the Common Fare diet at Wallens Ridge. He also had ICA approval for Common Fare in November 2013. On November 19, 2013, Broyles reported to the ICA that he and two other officers had observed Webb eat from a regular diet tray that day, in violation of his Common Fare agreement. On December 15, 2013, Broyles notified Webb that the ICA had suspended Webb from the Common Fare list for six months, based on the November 19 report that he had eaten from a regular diet tray.

-2-

Case 7:14-cv-00106-JPJ-PMS   Document 48   Filed 03/30/15   Page 2 of 8   Pageid#: 243

Webb states that he has never violated his Common Fare agreement; that Broyles fabricated the report of seeing Webb eat from a regular tray on November 19, 2013, in order to remove Webb from the diet to save money toward the prison's food service budget; and that before he received notice or a hearing on this alleged violation, Broyles stopped providing him with Common Fare meals on December 15, 2013. Webb asserts that he and the other inmates in his pod did not go to the dining hall on November 19, 2013, because they were served meals in their cells that day. He contends that no one approached him about a Common Fare violation until December 15, when Broyles first refused to serve him that diet.

A party is entitled to summary judgment if the pleadings, affidavits, and attached records on file show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Material facts are those necessary to establish the elements of a party's cause of action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. *Id.* A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). "Mere unsupported speculation . . . is not enough to

defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995).

In denying Broyles' Motion to Dismiss, I concluded that Webb had alleged facts stating a prima facie § 1983 claim against Broyles for violation of his First Amendment rights. *See Wall v. Wade*, 741 F.3d 492, 502 (4th Cir. 2014) ("'[A] prison official violates [an inmate's First Amendment] right if he intentionally and without sufficient justification denies an inmate his religiously mandated diet.'") (quoting *Lovelace v. Lee*, 472 F.3d 174, 199 (4th Cir. 2006) (noting "prisoner's free exercise rights may only be restricted by punitive measures to the extent that these measures are reasonably adapted to achieving a legitimate penological objective") (internal quotation marks and citation omitted). In addition, I found that Webb had stated facts on which he could conceivably prove that Broyles unilaterally deprived him of his constitutionally created liberty interest in the Common Fare diet by removing him from that diet without notice or a hearing. *See Lovelace*, 472 F.3d at 202 (stating elements of due process analysis in religious diet context).[2]

---

[2] In denying the Motion to Dismiss, I also noted that Webb's allegations stated a potential claim that the procedure used to deprive him of his religious diet was not adequate to protect against "'the risk of an erroneous deprivation.'" *Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). From the current record, however, it is clear that Webb does not challenge the constitutionality of the ICA procedures themselves. Rather, he contends that Broyle removed him from the diet before officials conducted any ICA procedures. Webb does

On summary judgment, Broyles first argues that Webb has not demonstrated a sincere religious need for the Common Fare diet or that deprivation of the diet for six months imposed a substantial burden on his religious practice.[3] These factors are critical to Webb's First Amendment claim regarding the temporary deprivation of his Common Fare status.

> "The Free Exercise Clause of the First Amendment forbids the adoption of laws designed to suppress religious beliefs or practices." *Morrison v. Garraghty*, 239 F.3d 648, 656 (4th Cir. 2001). This encompasses policies that impose a substantial burden on a prisoner's right to practice his religion. *Lovelace v. Lee*, 472 F.3d 174, 198 & n. 8 (4th Cir. 2006). "Under . . . the Free Exercise Clause . . . , a prisoner has a 'clearly established . . . right to a diet consistent with his . . . religious scruples,' . . . ." Id. at 198-99 (quoting *Ford v. McGinnis*, 352 F.3d 582, 597 (2nd Cir. 2003)).

*Wall*, 741 F.3d at 498. Webb must demonstrate that his motivation to consume a Common Fare diet is "rooted in [his] religion" rather than by secular reasons. *Doswell v. Smith*, 1998 WL 110161, at *4 (4th Cir. Mar. 13, 1998) (unpublished) (quoting *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 713 (1981)).

---

complain that ICA officers failed to notify him of his right to obtain witness statements and refused to review pod surveillance video to verify Webb's statement that inmates in his pod ate in their cells on November 19, 2013. Webb does not allege, however, that Broyles had any personal involvement in these alleged procedural mistakes under the ICA procedures. Thus, I find that Webb's due process claim in this action is focused solely on Broyle's suspension of his diet on December 15, 2013, and not on the adequacy of the ICA procedures, in general or as applied to him.

[3] Webb did not offer much detail about his religious dietary needs or how deprivation of Common Fare meals affected his religious practice. In response to Broyles' motion, however, he submitted several verified affidavits and responses, in which he describes the religious basis for his desire to consume Common Fare meals and the adverse effects he suffered during his suspension from that diet.

To prove the "substantial burden" aspect of his First Amendment claim, Webb must show that lack of the Common Fare diet "'put[] substantial pressure on [him] to modify his behavior and to violate his beliefs," or forced him to "choose between following the precepts of [his] religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of [his] religion . . . on the other hand." *Lovelace*, 472 F.3d at 187 (internal quotation marks and citations omitted).

The Common Fare diet is Kosher, prohibits pork products, does not allow serving meat and dairy in the same meal, and requires preparation of meat and dairy on separate sets of dishes. Webb states that based on his Buddhist beliefs, he seeks to eat a vegetarian diet that may include dairy products. He also presents documentation about Buddhist teachings that encourage, but do not require, vegetarianism. Webb asserts that Common Fare is consistent with his beliefs, and the ICA has twice approved him to receive the Common Fare diet, based on his religious dietary beliefs. I find this evidence sufficient to create a material dispute of fact about Webb's religious basis for requesting the Common Fare diet.

I also find material facts in dispute concerning the substantial burden aspect of Webb's First Amendment claim. Webb asserts that while on the Common Fare diet, he "can attain positive channel [sic] during meditation so I can contact beings in higher places to receive the knowledge I need on my path to attain

enlightenment." (Webb Affid. ¶ 7, ECF No. 40.) Webb states that during his six-month suspension, he was forced to eat foods tainted with "impure karma, stress hormones of killed terrified animals," which caused him to lose ground on his path to enlightenment. (*Id.*) Moreover, the defendant does not offer evidence that Webb could have obtained a diet consistent with his religious beliefs during the period when he was without Common Fare approval.

The events of November 19, 2013, are also in dispute and material to Webb's claim. Broyles and other officers state that they saw Webb in the chow hall accepting a regular meal, but Webb claims that these statements are false and the documentation he received in discovery of inmate movement to the chow hall on that date is fabricated. Webb also states that Broyles falsely reported fifteen other inmates from Webb's pod for allegedly violating their Common Fare agreements on November 19, 2013.

Finally, Broyles asserts that he denied Common Fare meals to Webb only after completion of ICA procedures, which provided Webb with adequate due process protections. Broyles submits affidavits and documentation indicating that after he reported Webb's violation of Common Fare on November 19, 2013, Webb received notice of the violation the same day; a hearing was conducted on November 21, where the hearing officer found that Webb had violated the Common Fare agreement; and that the ICA approved suspension of Webb's

Common Fare diet on December 10, 2013. Webb asserts, however, that no such notice or hearing occurred, the paperwork is fabricated, and the affidavits are false.

On this record, taking the evidence in the light most favorable to Webb, I conclude that he has presented genuine issues of material fact in dispute and "enough evidence of [Broyles'] culpability to survive" the Motion for Summary Judgment on the claims that Broyles knowingly violated his First Amendment and due process rights. *Lovelace*, 472 F.3d at 195. Accordingly, I will deny Broyles' motion. Based on these same disputed facts, I will also deny Webb's Motion for Summary Judgment.

A separate Order will be entered herewith.

DATED: March 30, 2015

/s/ James P. Jones
United States District Judge