# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **TRAVIS JAMES WEBB,** | ) | |
| Plaintiff, | ) | Civil Action No.: 7:14cv00106 |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **MICHAEL BROYLES, etc.,** | ) | By: Pamela Meade Sargent |
| Defendant. | ) | United States Magistrate Judge |

The pro se plaintiff, Travis James Webb, a Virginia Department of Corrections, ("VDOC"), inmate currently incarcerated at River North Correctional Center, brought this civil rights action under 42 U.S.C. § 1983, against Michael Broyles, the Food Operations Director at Wallens Ridge State Prison, ("Wallens Ridge"), where he formerly was incarcerated. Webb claims that Broyles falsely accused him of violating his religious diet agreement, knowing that Webb's approval for the diet would be suspended, in violation of the First Amendment. Webb also claims that Broyles stopped providing the diet to Webb before he had received notice and a hearing, in violation of his due process rights. Webb's claims are before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). A bench trial/evidentiary hearing was held before the undersigned on May 26, 2015. The undersigned now submits the following report recommending that judgment be entered in favor of the defendant.

*I. Facts*

At the evidentiary hearing, Webb testified that he had been receiving the Common Fare[1] diet at Wallens Ridge since September 27, 2012. Webb said that he had requested the Common Fare diet because he is a Buddhist. Webb admitted that his Buddhist faith did not require him to observe any particular dietary restrictions. Nevertheless, Webb stated that he believed that the Common Fare diet was the healthiest diet and, thus, it better purified his body, which, in turn, was better for his meditation. Webb stated that, as a Buddhist, the better a person can purify his body, the closer a person comes to enlightenment -- the ultimate goal of the faith. Webb testified that he believed that the Common Fare diet allowed him to "get my body as pure as possible."

Webb also testified that he received and signed a Common Fare Agreement, (Defendant's Exhibit No. 6), prior to receiving the Common Fare diet at Wallens Ridge. Subsequent to the hearing, Webb submitted evidence that an Institutional Classification Authority Hearing officer recently had found that he had never signed a Common Fare Agreement while an inmate at Wallens Ridge. (Docket Item No. 72, Att. 1, Exh. A.)

Webb testified that he was removed from the Common Fare diet at the lunch meal on December 15, 2013, while he was an inmate housed in the C-1 pod at Wallens Ridge. He said that approximately 15 Wallens Ridge inmates were

---

[1] The Common Fare diet is a diet used by the VDOC to meet religious dietary restrictions, such as remaining kosher.

removed from the diet on that day. Webb alleges that he and the others were summarily removed from the diet by Broyles in an effort to save money.

Webb testified that he received a Common Fare breakfast tray, but, at lunch on December 15, he received a regular tray. Webb stated that he did not receive any notice that he would be removed from the diet, nor did he receive any hearing, prior to his removal. Webb testified that he received notice of his removal after receiving another regular tray for the evening meal on December 15. This notice, Webb said, told him that a hearing on his removal would be conducted the next day. Webb testified that a hearing on the issue was conducted at his cell door by Unit Manager Reynolds on December 16, 2013. Webb testified that any document showing that he received notice and a hearing in November 2013 was false and had been fabricated by the VDOC to support Broyles.

Webb stated that he was housed in the C-1 pod at Wallens Ridge on November 19, 2013. Webb stated that the allegation that he ate a regular tray in the chow hall on November 19, 2013, was not, and could not, be true because the C-1 pod did not go to the chow hall on November 19, 2013. Webb testified that any document showing that the C-1 pod went to the chow hall on November 19 was false and had been fabricated by the VDOC to support Broyles's actions.

Webb testified that he was removed from the Common Fare diet for more than six months before he was reinstated to the Common Fare diet on June 14, 2014.

Christopher Randall Tiller, a counselor at Wallens Ridge, testified that he served notice on Webb on November 19, 2013, that a hearing would be held on November 21, 2013, to suspend Webb's Common Fare diet based on allegations that he had eaten from a regular tray. Tiller said that he served this notice, (Plaintiff's Exhibit No. 1), on Webb at his cell door on November 19. He also testified that he was present when Reynolds conducted the hearing at Webb's cell door on November 21. Tiller testified that he had no personal knowledge as to the allegations that Webb had eaten from a regular tray before his suspension. He also stated that the decision as to whether to suspend Webb's Common Fare diet rested with the hearing officer, Unit Manager Reynolds. Tiller specifically denied that the hearing was conducted, or that he served notice of the hearing on Webb, in December 2013.

Quinn C. Reynolds, the C Building Unit Manager at Wallens Ridge, testified that he conducted a hearing at Webb's cell door on November 21 to determine if Webb's Common Fare diet should be suspended based on allegations that he had eaten from a regular tray. Reynolds stated that he also had no personal knowledge as to whether Webb had eaten from a regular tray or not. Reynolds stated that, at the time of the hearing, he had an Incident Report, (Plaintiff's Exhibit No. 3), before him alleging that Webb had been seen eating a regular tray in the chow hall on November 19, 2013. Reynolds testified that Webb denied the allegation at the November 21 hearing. Reynolds stated that, based on the evidence before him, he found that Webb had violated the terms of his Common Fare Agreement, and he recommended that Webb's Common Fare diet be suspended for six months. Reynolds stated that his recommendation then went to the Program Manager and to the Assistant Warden. Reynolds stated that an inmate's Common

-4-

Case 7:14-cv-00106-JPJ-PMS   Document 75   Filed 09/25/15   Page 4 of 11   Pageid#: 339

Christopher Randall Tiller, a counselor at Wallens Ridge, testified that he served notice on Webb on November 19, 2013, that a hearing would be held on November 21, 2013, to suspend Webb's Common Fare diet based on allegations that he had eaten from a regular tray. Tiller said that he served this notice, (Plaintiff's Exhibit No. 1), on Webb at his cell door on November 19. He also testified that he was present when Reynolds conducted the hearing at Webb's cell door on November 21. Tiller testified that he had no personal knowledge as to the allegations that Webb had eaten from a regular tray before his suspension. He also stated that the decision as to whether to suspend Webb's Common Fare diet rested with the hearing officer, Unit Manager Reynolds. Tiller specifically denied that the hearing was conducted, or that he served notice of the hearing on Webb, in December 2013.

Quinn C. Reynolds, the C Building Unit Manager at Wallens Ridge, testified that he conducted a hearing at Webb's cell door on November 21 to determine if Webb's Common Fare diet should be suspended based on allegations that he had eaten from a regular tray. Reynolds stated that he also had no personal knowledge as to whether Webb had eaten from a regular tray or not. Reynolds stated that, at the time of the hearing, he had an Incident Report, (Plaintiff's Exhibit No. 3), before him alleging that Webb had been seen eating a regular tray in the chow hall on November 19, 2013. Reynolds testified that Webb denied the allegation at the November 21 hearing. Reynolds stated that, based on the evidence before him, he found that Webb had violated the terms of his Common Fare Agreement, and he recommended that Webb's Common Fare diet be suspended for six months. Reynolds stated that his recommendation then went to the Program Manager and to the Assistant Warden. Reynolds stated that an inmate's Common

Fare diet could be suspended only after these persons approved of the decision. Reynolds testified that his decision to recommend Webb's Common Fare diet be suspended was approved at both levels on administrative review. (Defendant's Exhibit No. 3.) Reynolds also testified that the unit logbook for the C-1 pod showed that the pod went to the chow hall for the evening meal at approximately 3:30 p.m. on November 19, 2013. (Defendant's Exhibit No. 5.)

Reynolds further testified that Broyles, the Food Operations Director at Wallens Ridge, did not have the authority to suspend any inmate's Common Fare diet without first giving the inmate notice and a hearing. In fact, he stated that Broyles had no role in the process of removing Webb from the Common Fare diet, other than filing the Incident Report alleging that Webb had violated the Common Fare Agreement.

Broyles testified that he held the position of Food Operations Director at Wallens Ridge in November 2013 and at the time of his testimony. Broyles testified that he saw Webb and several other Common Fare inmates eating from regular trays in the chow hall on November 19, 2013. He said that Sgt. Hughes identified Webb to him. Broyles stated that he also saw Webb's identification card containing his name, inmate number and photograph. Broyles stated that it was easy to identify who was eating from a regular tray and who was not because the regular meal trays are tan or beige, while the Common Fare meal trays are orange.

Broyles said that, after witnessing Webb eating from a regular tray, he generated the Incident Report, (Plaintiff's Exhibit No. 3.), alleging that Webb had violated the terms of the Common Fare Agreement. He said that he then submitted

the Incident Report to the watch officer. Broyles stated that he did not have authority to suspend any inmate from the Common Fare diet and that he had never taken any inmate off of the Common Fare diet. Broyles testified that the filing of an Incident Report would not result in Webb being immediately suspended from the Common Fare diet. Webb would not have been suspended from the Common Fare diet, Webb said, until after a hearing. He also said that he was not involved in the hearing process, other than preparing the initial Incident Report, which initiated the process.

Broyles testified that, on November 19, 2013, he was standing at the tray pickup window in the chow hall and noticed that very few Common Fare trays were picked up. Broyles stated that he was not certain, but he believed that the regular meal that day consisted of a baked chicken patty with two pieces of bread, which, he said, was a very popular meal with the inmates. Broyles said that he then looked at the Common Fare list and noticed that very few names on the list had been checked as receiving a Common Fare tray at that meal. Broyles stated that he then notified Sgt. Hughes and asked him to go out into the chow hall with him to verify who from the Common Fare list had gotten regular trays that day. Broyles stated that 10 to 15 inmates who were supposed to receive Common Fare meals took regular trays that day.

Broyles testified that each Sunday his department received a list of the inmates who were to receive the Common Fare diet for the upcoming week. Broyles stated that, as Food Operations Director, he had no control over whose name appeared on the list. Broyles stated that an inmate's name had to appear on this list to receive a Common Fare tray.

-6-

Case 7:14-cv-00106-JPJ-PMS   Document 75   Filed 09/25/15   Page 6 of 11   Pageid#: 341

Broyles conceded that a Common Fare meal costs about 75 percent more than a regular inmate meal. Broyles estimated the cost of the average regular inmate meal at $1.98, while the cost of a Common Fare meal ranged from $2.25 to $3.00. He stated that it was very expensive to prepare Common Fare trays that were not eaten. Broyles stated that there was no quota regarding the number of Common Fare meals allowed to inmates. He also stated that he had never falsely accused any inmate of violating the Common Fare Agreement. Broyles also testified that he did not work on December 15, 2013, because this day was a Sunday, and he did not work on Sundays.

## II. Analysis

Webb has sued Broyles, claiming that he improperly removed him from his Common Fare diet in violation of his Constitutional rights under the free exercise clause of the First Amendment and the due process clause of the Fourteenth Amendment.

Due process includes both procedural and substantive components. *See Plyler v. Moore* 100 F.3d 365, 374 (4th Cir. 1996) (citing *Love v. Pepersack*, 47 F.3d 120, 122 (4th Cir. 1995)). Webb has not specified whether he is alleging a violation of his procedural due process rights or his substantive due process rights. Nonetheless, it appears to the court that he is asserting a violation of his procedural due process rights because he complains that his Common Fare diet was suspended without proper notice and a hearing. "In order to prevail on a procedural due process claim, the [inmate] must show that [he has] a property interest ... of which [he has] been deprived without due process of law." *Plyler*, 100 F.3d at 374

(citation omitted). To prevail on his due process claim against Broyles, Webb also must show that it was Broyles who deprived him of his Common Fare diet.

The uncontradicted evidence before the court, however, is that Broyles, as Food Operations Director, did not have the authority to remove and, in fact, did not remove, Webb from the Common Fare diet. Even if Webb's testimony that he was removed from the diet on December 15, 2013, without notice or hearing, is taken as true, he has not established that Broyles was responsible for this action. In fact, all three defense witnesses testified that Broyles did not have the authority to remove an inmate from the Common Fare diet. While Webb testified that he was removed from the Common Fare diet on December 15, Broyles testified that he did not work that day. Furthermore, Webb conceded that he did receive notice and a hearing, although he claimed that it occurred in November. If Broyles had the authority to remove an inmate from the Common Fare diet, why would a hearing before the unit manager have been held? For these reasons, I find that Webb has not shown that Broyles removed him from the Common Fare diet. Therefore, I will recommend that the court deny Webb's claims and grant judgment in favor of the defendant, Broyles, as to Webb's due process claim.

"The Free Exercise Clause of the First Amendment forbids the adoption of laws designed to suppress religious beliefs or practices." *Morrison v. Garraghty,* 239 F.3d 648, 656 (4th Cir. 2001) (citation omitted). This encompasses policies that impose a substantial burden on a prisoner's right to practice his religion. *See Lovelace v. Lee,* 472 F.3d 174, 198 & n.8 (4th Cir. 2006). "Under ... the Free Exercise Clause ..., a prisoner has a 'clearly established ... right to a diet consistent

with his ... religious scruples….'" *Lovelace,* 472 F.3d at 198-99 (quoting *Ford v. McGinnis,* 352 F.3d 582, 597 (2nd Cir. 2003)).[2]

It is important to note that Webb is not contesting the constitutional validity of the VDOC policy that allows an inmate to be suspended from the Common Fare diet for violating his Common Fare Agreement. If he were doing so, he has produced no evidence that the defendant, Broyles, was responsible for promulgating this policy. Furthermore, as stated above, the evidence produced showed that Broyles did not have the authority to enforce this policy. Instead, Webb argues that Broyles purposefully falsely accused him of violating the Common Fare Agreement to deprive him of his Common Fare diet, in violation of his constitutional rights. Based on the evidence presented, however, I find that Broyles did not falsely accuse Webb of violating the Common Fare Agreement.

My finding on this issue turns on my weighing of the evidence presented. Based on the parties' testimony, I simply find Broyles's testimony the more credible. To believe Webb's testimony, I would not only have to find that every other witness who appeared testified falsely, but I also would have to find that each one of them falsified records to support their testimony. The evidence before the

---

[2] In closing arguments, defense counsel argued that Webb had failed to show that his sincerely held religious beliefs required him to eat only a Common Fare diet. "[P]rison officials may appropriately question whether a prisoner's religiosity, asserted as the basis for a requested accommodation, is authentic." *Cutter v. Wilkinson,* 544 U.S. 709, n.13 (2005); *see Gillette v. United States,* 401 U.S. 437, 457 (1971) ("[T]he 'truth' of a belief is not open to question; rather, the question is whether the objector's beliefs are 'truly held.'") (internal quotation marks omitted). Based on my findings with regard to the credibility of the witnesses contained below, it is difficult to find that Webb's testimony on this issue is credible. Nonetheless, because his testimony on this point was not contradicted, I will find that Webb sincerely believes that eating a Common Fare diet is necessary in pursuit of the Buddhist goal of enlightenment.

court does not support such a finding. Thus, I find that Webb ate from a regular tray on November 19, 2013. Therefore, I find that Broyles made no false allegation against Webb.

## PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. The plaintiff has failed to show that the defendant violated his due process rights; and
2. The plaintiff has failed to show that the defendant violated his right to freely exercise his religion.

## RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend that the court enter judgment in favor of the defendant on all claims.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of

the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record and unrepresented parties.

DATED: September 24, 2015.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE